NOTICE:  All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports.  If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

SJC-12016


EDMUND LaCHANCE  vs.  COMMISSIONER OF CORRECTION & others.[1]



Essex.     March 10, 2016. - October 21, 2016.

Present:  Gants, C.J., Spina, Cordy, Botsford, Duffly, Lenk, &
Hines, JJ.[2]



Civil Rights, Attorney's fees.  Practice, Civil, Attorney's
    fees.




Civil action commenced in the Superior Court Department on
June 20, 2006.

Following review by this court, 463 Mass. 767 (2012), a
motion for attorney's fees was heard by Robert A. Cornetta, J.,
and a motion for reconsideration was considered by him.

The Supreme Judicial Court on its own initiative
transferred the case from the Appeals Court.


William D. Saltzman for the defendants.
James R. Pingeon for the plaintiff.

_____

[1] Additional defendants, sued in their individual or
official capacities, or both, include the superintendent, the
deputy superintendent for classification, and the former
assistant director of classification at Souza-Baranowski
Correctional Center (SBCC).

[2] Justices Spina, Cordy, and Duffly participated in the
deliberation on this case prior to their retirements.

GANTS, C.J.  This appeal concerns an award of attorney's fees under the Federal Civil Rights Attorney's Fees Award Act of 1976, 42 U.S.C. § 1988(b), in a civil rights action brought by a Massachusetts prison inmate, Edmund LaChance.  LaChance claimed that the defendants violated his constitutional due process rights by holding him in essentially solitary confinement in a special management unit (SMU) for ten months, without a hearing, while waiting to transfer or reclassify him.  That litigation eventually resulted in our decision in LaChance v. Commissioner of Correction, 463 Mass. 767 (2012) (LaChance I), where we announced "for the first time that segregated confinement on awaiting action status for longer than ninety days gives rise to a liberty interest entitling an inmate to notice and a hearing," and a written posthearing decision.  Id. at 778.  See id. at 776-777.  On remand, a Superior Court judge entered declaratory judgment in favor of LaChance and awarded him $28,578.69 in attorney's fees and costs under 42 U.S.C. § 1988(b).  The defendants are challenging that award in this appeal.

The principal issue before us is whether LaChance qualified for an award of fees as a "prevailing party" under § 1988(b), even though he had already been discharged in 2006 from the SMU detention that was the subject of his suit, long before he won any relief in his favor.  The defendants argue that, in these

circumstances, LaChance was not a prevailing party because the declaratory judgment he ultimately won was moot, and did not directly benefit him or materially alter his relationship with the defendants, at the time it was entered.  We conclude, however, that LaChance does qualify as a prevailing party in the circumstances of this case, where the record demonstrates that (1) the declaratory judgment he obtained was not moot when entered, because it concerned a deprivation of civil rights of short duration that was capable of repetition against LaChance; and (2) LaChance directly benefited from that judgment at the time it was entered.  We also reject the defendants' contention that the judge's award of fees to LaChance was unreasonable.  Accordingly, we affirm the judge's award of attorney's fees and costs to LaChance.

Background.  We briefly summarize the facts that gave rise to this litigation, which are detailed in LaChance I, 463 Mass. at 769-773.  LaChance has been in the custody of the Department of Correction (DOC) from the inception of this litigation through at least the submission of his brief on appeal.  During most of this time, he was an inmate at Souza-Baranowski Correctional Center (SBCC), a maximum security prison in Shirley.  In December, 2005, he was assigned to SBCC's SMU for fourteen days as a sanction for throwing a cup of pudding at another inmate and later threatening to harm him.  After

completing this disciplinary detention, however, he continued to be held in the SMU for another ten months, from January to November, 2006, on "awaiting action" status pending his reclassification or transfer to another facility.[3]  LaChance did not leave the SMU and return to his previous placement until the other inmate involved in the altercation had been moved out of it.  During his ten-month detention in the SMU, LaChance was in solitary confinement for all but a few hours per week.  He was shackled whenever he left his cell; allowed only one hour of recreation per day, five days per week, in an unsheltered, outdoor cage; barred from educational, religious, vocational, and rehabilitative programming available to other inmates; and permitted only very limited visitation and library privileges.  Although a prison official informally reviewed LaChance's status on a weekly basis and gave him written reports of the reviews, he was not given a hearing.

In an amended complaint filed in Superior Court in May, 2008, LaChance asserted claims under 42 U.S.C. § 1983 and G. L. c. 12, § 11I, alleging that the conditions of his SMU detention

---

[3] In LaChance v. Commissioner of Correction, 463 Mass. 767, 769 n.5 (2012) (LaChance I), we noted that, although "awaiting action" was not defined in Department of Correction (DOC) regulations pertaining to detention in a special management unit (SMU), the phrase was used in other contexts, generally referring to confinement pending investigation or a final placement or transfer decision.  See 103 Code Mass. Regs. § 421.06 (1994); 103 Code Mass. Regs. § 430.21(1) (2006).

were at least as harsh as those in a departmental segregation unit (DSU), but he was denied the right to a hearing guaranteed in DOC regulations governing DSU confinement.  See 103 Code Mass. Regs. §§ 421.00 (1994).  He requested compensatory and punitive damages, a declaration that the defendants' actions were unlawful, and an award of costs including reasonable attorney's fees.

On April 6, 2010, a judge granted LaChance's motion for partial summary judgment on his claims for declaratory relief. Citing our decision in Haverty v. Commissioner of Correction, 437 Mass. 737 (2002), the judge concluded that LaChance's confinement in the SMU was substantially similar to confinement in a DSU, and that the defendants violated his constitutional due process rights by failing to provide him with the same procedural protections afforded by the DSU regulations.

In the same order, the judge allowed in part and denied in part the defendants' cross motion for summary judgment.  The judge granted summary judgment in favor of all defendants on LaChance's claim under the Massachusetts Civil Rights Act, G. L. c. 12, §§ 11H and 11I, on the ground that LaChance had offered no evidence that the defendants had employed threats, intimidation, or coercion, a necessary element of that claim. See Layne v. Superintendent, Mass. Correctional Inst., Cedar Junction, 406 Mass. 156, 158 (1989).  The judge also granted

summary judgment in favor of two defendants on LaChance's claims for money damages against them in their official capacities under 42 U.S.C. § 1983, because money damages against State officials are available only if they are sued in their individual capacities.  See Will v. Michigan Dep't of State Police, 491 U.S. 58, 71 (1989); O'Malley v. Sheriff of Worcester County, 415 Mass. 132, 140-141 (1993).  The judge denied the defendants' summary judgment motion, however, insofar as they argued that they could not be sued in their individual capacities because they enjoyed qualified immunity as government officials.  He reasoned that after this court's decision in Haverty, supra, it should have been clear to the defendants that the conditions of LaChance's SMU confinement were substantially similar to those in a DSU and that LaChance was therefore entitled to the same procedural protections.  The judge concluded that the defense of qualified immunity would therefore be unavailable to the defendants if they directly participated in this violation of LaChance's clearly established rights.  See O'Malley, 415 Mass. at 142 (plaintiffs can overcome government officials' qualified immunity defense by showing that defendants directly participated in violating plaintiffs' clearly established rights).

The defendants sought interlocutory appeal under the doctrine of present execution from the judge's ruling on

qualified immunity,[4] and we transferred the case on our own

motion.  We held that the defendants were entitled to qualified

immunity and directed the Superior Court to enter summary

judgment in their favor as to the damages claims against the

individual defendants under 42 U.S.C. § 1983.  We noted,

"[g]overnment officials performing discretionary functions . . .

generally are shielded from liability for civil damages insofar

as their conduct does not violate clearly established statutory

or constitutional rights of which a reasonable person would have

known."  LaChance I, 463 Mass. at 777, quoting Rodriques v.

Furtado, 410 Mass. 878, 882 (1991).  We concluded that it would

not have been clear to reasonable officers that their behavior

violated LaChance's due process rights, because "neither State

nor Federal law ha[d] clearly articulated the outer limit of

what constitutes 'reasonable' segregated confinement on awaiting

action status without the safeguards of procedural due process."

LaChance I, supra at 778.

---

[4] "The doctrine of present execution is a limited exception
to the finality rule.  It permits the immediate appeal from an
interlocutory order if the order will interfere with rights in a
way that cannot be remedied on appeal from a final judgment."
Kent v. Commonwealth, 437 Mass. 312, 315 n.6 (2002).  Where a
public official asserts immunity from suit as a defense, a
ruling allowing the suit to proceed may be appropriate for
appeal under the doctrine of present execution because otherwise
the benefits of immunity would be irrevocably lost.  See Breault
v. Chairman of the Bd. of Fire Comm'rs of Springfield, 401 Mass.
26, 31 (1987), cert. denied, 485 Mass. 906 (1988).

We then clearly articulated the outer limit of what Federal due process requires for reasonable segregated confinement on awaiting action status.[5] We declared that, given the restrictions imposed on LaChance in the SMU, his ten-month detention on awaiting action status was not reasonable and gave rise to a liberty interest that was entitled to the protection of due process. LaChance I, 463 Mass. at 775-776. We further held that the procedures followed by the DOC were insufficient to safeguard that interest. We concluded that "an inmate confined to administrative segregation on awaiting action status, whether such confinement occurs in an area designated as an SMU, a DSU, or otherwise, is entitled, as a matter of due process, to notice of the basis on which he is so detained; a hearing at which he may contest the asserted rationale for his confinement; and a posthearing written notice explaining the reviewing authority's classification decision." Id. at 776-777. We left it to the DOC to promulgate appropriate regulations, balancing the inmate's interest in challenging potentially arbitrary detention with prison officials' interest in securing reclassification or transfer of inmates. But we concluded that

_____

[5] In considering the defendants' appeal in LaChance I, "it was necessary to focus on LaChance's Federal due process claims because LaChance would be entitled to damages under his § 1983 claims only if the defendants knowingly violated LaChance's rights under the United States Constitution." Cantell v. Commissioner of Correction, 475 Mass.    ,    (2016).

"in no circumstances may an inmate be held in segregated confinement on awaiting action status for longer than ninety days without a hearing." Id. at 777.

Upon remand, a different judge[6] issued an order for entry of a final judgment in favor of LaChance, declaring that the defendants had violated LaChance's constitutional due process rights by failing to provide him with the procedural protections that we announced in LaChance I. The judge allowed the defendants' motion for summary judgment as to all of LaChance's remaining claims. Final judgment was entered in accord with this order on August 21, 2013.

LaChance subsequently requested an award of $56,504.59 in attorney's fees and $392.69 in costs under 42 U.S.C. § 1988 and Mass. R. Civ. P. 54, as amended, 382 Mass. 829 (1981). The judge who had entered judgment in favor of LaChance concluded that LaChance was a "prevailing party" and therefore entitled to reasonable attorney's fees under § 1988, even though he had not prevailed on his claims for money damages and no injunction had entered. The judge held that LaChance "clearly prevailed in proving his constitutional claim" and "won a significant victory for himself as well as any other inmate that could possibly be held in segregated confinement" because, as a result of his

---

[6] The judge who had decided the summary judgment motions had retired.

litigation, "the DOC is not permitted to hold an inmate in segregated confinement for longer than ninety days without providing procedural protections." The judge also concluded that the significance of this victory was not affected by the issuance of a declaratory judgment rather than an injunction because "the courts rely on public officials to comply with the law as judicially defined and thus, injunctive orders are redundant." In determining the amount of the award, the judge first calculated the total amount of attorney's fees under the traditional "lodestar" formula,[7] and then reduced this amount ($56,372) by fifty per cent to $28,186 "due to the discrepancy between the claims brought and the claims won." With the addition of $392.69 in costs, the judge ordered a total award of $28,578.69.

The defendants asked the judge to reconsider this award in light of a decision by the United States Court of Appeals for the First Circuit, Ford v. Bender, 768 F.3d 15 (1st Cir. 2014), that issued five days after the award was entered. In Ford, the court held that, where a pretrial detainee in a civil rights action obtained declaratory relief regarding his pretrial disciplinary segregated confinement that was moot when judgment entered because the plaintiff was no longer a pretrial detainee,

---

[7] The "lodestar" figure is derived by multiplying hours reasonably spent by a reasonable hourly rate. See Stratos v. Department of Pub. Welfare, 387 Mass. 312, 322 (1982).

the plaintiff was not a prevailing party, and therefore not entitled to attorney's fees and costs under § 1988. Id. at 31. The defendants argued that LaChance was similarly not a prevailing party because he had been discharged from the SMU before the declaratory relief was entered, so his declaratory judgment was moot.

The judge denied the defendants' motion for reconsideration on the ground that mootness was not a new issue and could have been raised earlier by the defendants. The judge further held that, even assuming that the Ford decision changed the governing law, that change was not a sufficiently extraordinary circumstance to justify reopening a final judgment under Mass. R. Civ. P. 60 (b), 365 Mass. 828 (1974).[8] The defendants appealed the award of attorney's fees, and we transferred the case on our own motion.

Discussion. Title 42 U.S.C. § 1988(b) provides that in an action to enforce certain Federal civil rights statutes, including 42 U.S.C. § 1983, "the court, in its discretion, may allow the prevailing party . . . a reasonable attorney's fee as part of the costs." Section 1988 thus creates an exception to the "American Rule" that litigants must ordinarily bear their

---

[8] The court reviewed the defendants' motion for reconsideration under Mass. R. Civ. P. 60 (b), rather than Mass. R. Civ. P. 59 (e), 365 Mass. 827 (1974), because it was filed more than ten days after entry of the award of fees.

own attorney's fees and expenses. By authorizing awards of fees to prevailing plaintiffs in civil rights actions, the statute serves "to encourage suits that are not likely to pay for themselves, but are nevertheless desirable because they vindicate important rights." Stratos v. Department of Pub. Welfare, 387 Mass. 312, 323 (1982). It "promote[s] civil rights enforcement and . . . deter[s] civil rights violators, by encouraging private lawsuits aimed against civil rights abuses." Kadlick v. Department of Mental Health, 431 Mass. 850, 852 (2000).

"Congress enacted § 1988 specifically because it found that the private market for legal services failed to provide many victims of civil rights violations with effective access to the judicial process. . . . These victims ordinarily cannot afford to purchase legal services at the rates set by the private market." Riverside v. Rivera, 477 U.S. 561, 576 (1986) (plurality opinion), citing H.R. Rep. No. 94-1558, at 1, 3; S. Rep. No. 94-1011, at 2. "[Fee] awards have proved an essential remedy if private citizens are to have a meaningful opportunity to vindicate the important Congressional policies which these laws contain. . . . If private citizens are to be able to assert their civil rights, and if those who violate the Nation's fundamental laws are not to proceed with impunity, then citizens must have the opportunity to recover what it costs them to

vindicate these rights in court." Riverside, supra at 577-578, quoting S. Rep. No. 94-1011, at 2.

Congress also recognized that a successful civil rights plaintiff acts "not for himself alone but also as a 'private attorney general,' vindicating a policy that Congress considered of the highest importance." Riverside, supra at 575, quoting H.R. Rep. No. 94-1558, at 2. Thus, in enacting § 1988, Congress also "meant to promote" a "'private attorney general' role" for plaintiffs in enforcing the civil rights laws. Texas State Teachers Ass'n v. Garland Indep. Sch. Dist., 489 U.S. 782, 793 (1989).

In this appeal, the defendants have challenged the judge's award of fees on two grounds. First, they assert that the judge erred in concluding that LaChance is a prevailing party. Second, they contend that the award of fees is excessive. We address each issue in turn.

1. Prevailing party. Whether LaChance is a "prevailing party" is an issue of law that we consider de novo. See Newell v. Department of Mental Retardation, 446 Mass. 286, 298, cert. denied, 549 U.S. 823 (2006). In general, under § 1988, "plaintiffs may be considered 'prevailing parties' for attorney's fees purposes if they succeed on any significant issue in litigation which achieves some of the benefit the parties sought in bringing suit." Farrar v. Hobby, 506 U.S.

103, 109 (1992), quoting Hensley v. Eckerhart, 461 U.S. 424, 433 (1983). Following Farrar, we have held that to qualify for an award of fees as a "prevailing party" under § 1988, first, a civil rights plaintiff "must obtain at least some relief on the merits of his claim"; second, the "plaintiff must obtain an enforceable judgment against the defendant from whom fees are sought"; and third, "[w]hatever relief the plaintiff secures must directly benefit him at the time of the judgment or settlement." Mendoza v. Licensing Bd. of Fall River, 444 Mass. 188, 210 (2005), quoting Farrar, supra at 111. We have further said that "for a party to be considered a 'prevailing party' under Federal fee-shifting statutes there must be a 'material alteration of the legal relationship of the parties,' . . . and there must be a 'judicial imprimatur on the change.'" Newell, supra at 297-298, quoting Buckhannon Bd. & Care Home, Inc. v. West Virginia Dep't of Health & Human Resources, 532 U.S. 598, 604, 605 (2001). See T & D Video, Inc. v. Revere, 450 Mass. 107, 108 (2007), quoting Buckhannon, supra at 605 (defining "prevailing party" as "one who obtains a 'judicially sanctioned change in the legal relationship of the parties'").

Here, the defendants acknowledge that a declaratory judgment in favor of a plaintiff, like that won by LaChance, will usually suffice to establish that the plaintiff is a "prevailing party" under § 1988. See Lefemine v. Wideman, 133 S.

Ct. 9, 11 (2012).  They also acknowledge that, where the declaratory judgment is directed to public officials, an injunctive order is not necessary to create an enforceable judgment and confer prevailing party status on a plaintiff, because Massachusetts courts "assume that public officials will comply with the law declared by a court and that consequently injunctive orders are generally unnecessary."  Massachusetts Coalition for the Homeless v. Secretary of Human Servs., 400 Mass. 806, 825 (1987).

The defendants contend, however, that LaChance did not qualify as a "prevailing party" because he was discharged from the SMU in November, 2006, so the declaratory judgment he won (1) was moot when entered,[9] and (2) did not directly benefit LaChance or materially alter his legal relationship with the defendants.  We conclude that the declaratory judgment was not moot when entered, and that it both directly benefited  LaChance and materially altered his legal relationship with the

---

[9] As noted above, the Superior Court judge declined to address the defendants' mootness argument on the merits when he denied their motion for reconsideration because, in his view, the defendants should have raised the issue previously but failed to do so.  In fact, however, the defendants presented the mootness argument in their opposition to LaChance's motion for attorney's fees.  Moreover, as LaChance concedes, the defendants raised mootness in moving to dismiss his complaint and in opposing his motion for partial summary judgment.  We address the issue in light of those facts and because the question of mootness implicates the justiciability of the underlying case.

defendants, and therefore LaChance was correctly determined to be a "prevailing party" under § 1988.

The concept of mootness, as applied in the Federal courts, derives from the case or controversy requirement of art. III, § 2, cl. 1, of the United States Constitution. Under art. III, the subject matter jurisdiction of the Federal courts is limited to "cases" and "controversies." See Campbell-Ewald Co. v. Gomez, 136 S. Ct. 663, 669 (2016). To meet this jurisdictional requirement, there must be an "actual controversy" between the parties at all stages of the case. See id.; Hollingsworth v. Perry, 133 S. Ct. 2652, 2661 (2013) ("Article III demands that an 'actual controversy' persist throughout all stages of litigation"). An actual controversy exists only when the parties have a "personal stake" in the outcome. See Genesis Healthcare Corp. v. Symczyk, 133 S. Ct. 1523, 1528 (2013); Camreta v. Greene, 563 U.S. 692, 702 (2011) ("So long as the litigants possess [a] personal stake . . . , an appeal presents a case or controversy . . ."). This personal stake "requirement ensures that the Federal Judiciary confines itself to its constitutionally limited role of adjudicating actual and concrete disputes, the resolutions of which have direct consequences on the parties involved." Genesis Healthcare Corp., supra at 1528. If a plaintiff's circumstances change such that he or she no longer has a personal stake in the

outcome of the case, the case becomes moot; there is no longer an actual controversy as required for Federal court jurisdiction, and the case must be dismissed. See id. ("If an intervening circumstance deprives the plaintiff of a 'personal stake in the outcome of the lawsuit,' at any point during litigation, the action can no longer proceed and must be dismissed as moot" [citation omitted]); Already, LLC v. Nike, Inc., 133 S. Ct. 721, 726-727 (2013), quoting Murphy v. Hunt, 455 U.S. 478, 481 (1982) ("A case becomes moot -- and therefore no longer a 'Case' or 'Controversy' for purposes of Article III -- 'when the issues presented are no longer "live" or the parties lack a legally cognizable interest in the outcome'").

Plaintiffs cannot ordinarily "prevail" under § 1988 where the court lacks subject matter jurisdiction to enter relief in their favor because the case has become moot. In Rhodes v. Stewart, 488 U.S. 1 (1988), one of the principal cases cited by the defendants, the United States Supreme Court held that two plaintiff inmates were not entitled to attorney's fees as prevailing parties under 42 U.S.C. § 1988, even though they had won a favorable judgment, because their claims had become moot long before the judgment entered. The plaintiffs claimed that their constitutional rights had been violated by correctional officials who had refused them permission to subscribe to a magazine. A Federal District Court ruled that the officials had

not applied the proper standards in denying the inmates' request, ordered compliance with those standards, and subsequently awarded attorney's fees to the plaintiffs. See id. at 2. It later came to light, however, that one of the plaintiffs had died, and the other had been paroled and given a final release, long before the District Court entered its order. See id. at 3. Based on those facts, the Supreme Court overturned the judgment and award of attorney's fees, reasoning that "[a] modification of prison policies on magazine subscriptions could not in any way have benefited either plaintiff," and consequently "[t]he case was moot before judgment issued, and the judgment therefore afforded the plaintiffs no relief whatsoever." Id. at 4.

Similarly, in Ford, 768 F.3d at 31, as earlier noted, the United States Court of Appeals for the First Circuit held that the plaintiff inmate was not entitled to an award of attorney's fees as a prevailing party under § 1988 for declaratory relief he won in a Federal District Court arising from his pretrial detainment because the defendant was no longer a pretrial detainee when judgment entered. The court reasoned that the case was moot as to that issue when the relief was granted, so there was no case or controversy and therefore no Federal court jurisdiction to grant that relief. See id. See also id. at 29-30.

A case is not moot under Federal law, however, where "it falls within a special category of disputes that are 'capable of repetition' while 'evading review.'" Turner v. Rogers, 564 U.S. 431, 439 (2011), quoting Southern Pac. Terminal Co. v. Interstate Commerce Comm'n, 219 U.S. 498, 515 (1911). "A dispute falls into that category, and a case based on that dispute remains live, if '(1) the challenged action [is] in its duration too short to be fully litigated prior to its cessation or expiration, and (2) there [is] a reasonable expectation that the same complaining party [will] be subjected to the same action again.'" Turner, supra at 439-440, quoting Weinstein v. Bradford, 423 U.S. 147, 149 (1975). The Federal requirement that a case must be capable of repetition as to the same plaintiff ensures that the plaintiff still has an ongoing personal stake in the matter sufficient to meet the case or controversy requirement of art. III.[10]  See United States Parole

---

[10] The Federal courts have not always applied this requirement with strict consistency.  See, e.g., Honig v. Doe, 484 U.S. 305, 335-336 (1988) (Scalia, J., dissenting) ("Roe, at least one other abortion case, . . . and some of our election law decisions, . . . differ from the body of our mootness jurisprudence . . . in dispensing with the same-party requirement entirely, focusing instead upon the great likelihood that the issue will recur between the defendant and the other members of the public at large" [citations omitted]); 13C C.A. Wright, A.R. Miller, & E.H. Cooper, Federal Practice and Procedure § 3533.9, at 488 (3d ed. 2008) ("Although it has not been abandoned, the requirement that the individual plaintiff is likely to be affected by a future recurrence of a mooted dispute has been diluted in some cases"; citing cases).

Comm'n v. Geraghty, 445 U.S. 388, 398 (1980) ("Since the litigant faces some likelihood of becoming involved in the same controversy in the future, vigorous advocacy can be expected to continue"). The plaintiff need only show that "the controversy was capable of repetition"; the plaintiff need not show "that a recurrence of the dispute was more probable than not" (emphasis in original). Honig v. Doe, 484 U.S. 305, 318 n.6 (1988).

In Turner, 564 U.S. at 440, the Supreme Court held that a father's due process challenge to his incarceration for civil contempt based on his failure to make child support payments was not moot even though he had completed his twelve-month sentence, because his imprisonment was too short to be litigated fully before its expiration and there was a reasonable likelihood that he would again be subjected to the same action. In so holding, the Court cited evidence that the father had been the subject of several civil contempt proceedings for which he had been imprisoned on several occasions, including another six-month term imposed shortly after his release from the imprisonment at issue in his action. See id. at 436-437, 440. Other Federal decisions involving plaintiff inmates have also held that their cases were not moot because the alleged wrongs were likely to

recur in the future, based on evidence that the plaintiffs had been repeatedly subjected to similar conditions.[11]

LaChance's circumstances in this case are similar to those in Turner and the other cases just cited. LaChance has remained in DOC custody throughout the course of this litigation, and he has demonstrated through an unrebutted affidavit that there was a reasonable expectation when judgment entered that he would again be subjected to segregated detention, because he has been repeatedly confined in segregation units during his

---

[11] See Washington v. Harper, 494 U.S. 210, 218-219 (1990) (Court could properly decide case concerning administration of antipsychotic drugs to prisoner against his will, even though State had stopped doing so, because situation was likely to recur; prisoner was still in custody, was still mentally ill, had been twice transferred to center for treatment of felons with serious mental illness, and remained subject to transfer); Demery v. Arpaio, 378 F.3d 1020, 1026-1027 (9th Cir. 2004), cert. denied, 545 U.S. 1139 (2005) (detainees' suit challenging sheriff's policy of placing photographs of detainees on Internet while they were held in jail awaiting trial was not moot, even though they had been released from jail, because there was evidence that they would likely again be detained there; one plaintiff had been detained there twenty times, and eleven others had been detained there on more than one occasion); LeMaire v. Maass, 12 F.3d 1444, 1462 n.5 (9th Cir. 1993) (prisoner's constitutional challenge to conditions in disciplinary segregation unit was not moot, even though he was no longer being held there, because he remained under control of prison system, and practices and sanctions of which he complained were capable of repetition); Ferreira v. Duval, 887 F. Supp. 374, 382 (D. Mass. 1995) (prisoner's suit alleging constitutional violations during his departmental disciplinary unit confinement was not rendered moot by his discharge from unit because alleged violations were capable of repetition, yet evading review, where plaintiff had poor disciplinary record and five years left on his prison sentence and therefore had reasonable expectation of again being confined in unit).

incarceration.[12]  LaChance's affidavit also supports the
conclusion that SMU detentions are too short for prisoners to
obtain judicial relief before they are discharged, so that the
practice would evade review if LaChance's case and others like
it were dismissed on mootness grounds.

These facts distinguish LaChance's case from the cases
cited by the defendants where prisoners' civil rights claims
were held to be moot, such as Rhodes v. Stewart, supra, and Ford
v. Bender, supra.  The plaintiffs in those cases were either
dead or released from the custody at issue when declaratory
judgment entered, and therefore there was no reasonable
possibility that they would again be subjected to the same

---

[12] LaChance submitted the affidavit in response to the
defendants' motion for reconsideration of the award of
attorney's fees.  He stated that he had been placed in
segregation units many times during his incarceration, including
placement in the SMU at SBCC as a pretrial detainee for
approximately fourteen months in 2000-2001; placement in a
segregation unit at the Massachusetts Correctional Institution
at Concord as a sentenced prisoner for about three months from
late 2001 to early 2002; subsequent placements in the SMU at
SBCC from September 29, 2002, to February 10, 2003, and from
December 21, 2005, to November 15, 2006 (the placement
challenged in this action), plus "at least a few other occasions
in 2007-2009" for which he did not recall the dates; placements
in the segregation unit at the North Central Correctional
Institution at Gardner "on at least three occasions," for which
he did not recall the dates; and a placement in the segregation
unit at the Massachusetts Correctional Institution at Cedar
Junction from June 5 to July 22, 2014.  Although the motion
judge did not make any findings based on LaChance's affidavit,
the defendants did not dispute the assertions therein, and we
are in as good a position to assess it as the judge below.  See
Gulf Oil Corp. v. Fall River Hous. Auth., 364 Mass. 492, 493
(1974).

wrongs.  Here, by contrast, LaChance was still in custody when judgment entered and, based on his prior history of segregated confinement, there was a reasonable expectation that he would again be returned to such confinement.[13]  Therefore, applying Federal principles of justiciability, the denial of due process at the SMU that was the basis of LaChance's civil rights claim was capable of repetition as to him, so his claim was not moot when judgment entered.

The declaratory judgment won by LaChance also benefited him and materially altered his legal relationship with the defendants because that judgment required the defendants to provide him with additional procedural protections that he had not previously received if he were again placed in segregated detention on awaiting action status.  See Lefemine, 133 S. Ct. at 11 (where Federal District Court ruled that defendants had violated plaintiff abortion protester's rights and enjoined them

---

[13] We are mindful of the United States Supreme Court's observation that, "for purposes of assessing the likelihood that state authorities will reinflict a given injury," it has "generally . . . been unwilling to assume that the party seeking relief will repeat the type of misconduct that would once again place him or her at risk of that injury."  Honig, 484 U.S. at 320.  But we note that the DOC's SMU regulations provide that an inmate may be placed in administrative segregation for nondisciplinary reasons such as pending transfer or classification, pending an investigation or hearing, or for the inmate's own safety.  103 Code Mass. Regs. § 423.08(1) (1995).  Thus, we need not presume repeated misconduct by LaChance to conclude that there was a reasonable expectation when judgment entered that he would again be subjected to segregated confinement.

from engaging in similar conduct in future, that ruling materially altered parties' relationship and therefore justified award of fees because police had intended to stop plaintiff from protesting with his signs but, as result of ruling, could not prevent him from demonstrating in that manner). Although LaChance could only take advantage of this benefit in the future, it was nevertheless a tangible present benefit to him. See Mendoza, 444 Mass. at 210-211 (judgments that invalidated adult entertainment ordinances challenged by plaintiff bar owner materially altered his relationship with defendants, even though he was still barred from presenting nude dancing by limitations in zoning variance, because plaintiff was "eligible to apply for a zoning variance that would permit nude dancing").

In short, because LaChance has adequately shown that there was a reasonable expectation when judgment entered that he would again be held in segregated detention on awaiting action status, he had a sufficient ongoing interest in his suit for it not to be moot, even if he was no longer held in the SMU when declaratory relief was entered in his favor. And because he had an ongoing interest in the outcome of his suit, the favorable rulings he obtained benefited him. We therefore conclude that, even if this case had been brought in Federal court under the

constraints of Federal subject matter jurisdiction, LaChance

would qualify for an award of fees as a "prevailing party."[14]

---

[14] We note that, because Federal limitations on justiciability are grounded in the case or controversy limitation in art. III of the United States Constitution, and because art. III does not apply to State courts, State courts remain free to define their own jurisdictional limits even when adjudicating Federal claims. See ASARCO Inc. v. Kadish, 490 U.S. 605, 617 (1989) ("We have recognized often that the constraints of Article III do not apply to state courts, and accordingly the state courts are not bound by the limitations of a case or controversy or other federal rules of justiciability even when they address issues of federal law, as when they are called upon to interpret the Constitution or . . . a federal statute").  In Massachusetts, "we have on occasion answered questions in moot cases where the issue was one of public importance, where it was fully argued on both sides, where the question was certain, or at least very likely, to arise again in similar factual circumstances, and especially where appellate review could not be obtained before the recurring question would again be moot."  Commonwealth v. Humberto H., 466 Mass. 562, 574 (2013), quoting Lockhart v. Attorney Gen., 390 Mass. 780, 783 (1984).  Notably, under our principles of justiciability -- in contrast with Federal jurisprudence -- it is not "indispensable that the case be capable of repetition in respect only to the particular claimant," because the "doctrine is designed to assist in the clarification of the law generally, and not simply to assist the situation of a particular party."  Mendonza v. Commonwealth, 423 Mass. 771, 777 (1996).

We recognize that there is an unanswered question whether a plaintiff may be a "prevailing party" under § 1988 in a Massachusetts court where the plaintiff obtains a declaratory judgment or injunctive relief after the case became moot, even though the plaintiff could not be a "prevailing party" had the case been brought in Federal court, where mootness would have resulted in dismissal of the plaintiff's claims.  It arguably would thwart the congressional purpose in enacting § 1988 if a Massachusetts court were to exercise its broader subject matter jurisdiction to allow a moot civil rights case brought under 42 U.S.C. § 1983 to proceed to judgment where the challenged conduct is likely to recur against others, and then, when the plaintiff succeeds in obtaining a declaratory judgment or injunctive relief, conclude that the plaintiff's attorneys are

2. Reasonableness of the award of fees. Having concluded that LaChance was a prevailing party, we now address whether the judge abused his discretion in his award of attorney's fees. The defendants contend that the judge abused his discretion in concluding that $28,186 was a reasonable award of attorney's fees, because LaChance's success in relation to his goals was minimal and his attorneys devoted considerably more effort to claims on which they failed than to those on which they succeeded.[15] We do not agree.

Section 1988(b) permits a prevailing party to recover "a reasonable attorney's fee" (emphasis added). The determination of the amount of reasonable attorney's fees rests in the sound discretion of the judge, to be exercised in accord with certain governing principles. See Hensley, 461 U.S. at 436-437; Stratos, 387 Mass. at 321. This determination should ordinarily begin with the lodestar calculation, based on the number of hours that are reasonably expended and adequately documented, multiplied by a reasonable hourly rate. The judge may then adjust the lodestar calculation upward or downward in light of

---

not entitled to an award of attorney's fees because the plaintiff himself or herself did not "prevail." Because the plaintiff here would be a "prevailing party" even if his case had been brought in Federal court, we need not reach that unanswered question in this case.

[15] The defendants do not challenge the $392.69 in costs awarded by the Superior Court.

the results obtained.  See Hensley, supra at 433-434.  Where the plaintiff has obtained only partial success, it may be feasible to exclude time devoted to claims on which the plaintiff did not succeed.  In many civil rights cases, however, it may be difficult to divide the hours expended on a claim-by-claim basis, because "the plaintiff's claims for relief will involve a common core of facts or will be based on related legal theories," and "[m]uch of counsel's time will be devoted generally to the litigation as a whole."  Id. at 435.  In those cases, the "court should focus on the significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation," and "it may simply reduce the award to account for the limited success."  Id. at 435, 436-437.  "There is no precise rule or formula for making these determinations."  Id. at 436.

Bearing in mind the deference due the judge's "superior ability to calibrate such awards to the nuances of the case," Diffenderfer v. Gomez-Colon, 587 F.3d 445, 452 (1st Cir. 2009), we conclude that the judge did not abuse his discretion.  In our view, the judge carefully and thoughtfully applied these governing principles in determining an appropriate award of fees.  He scrutinized the number of hours worked by the plaintiff's counsel, noting that hours devoted to certain claims, motions, and issues were properly excluded where they

were unsuccessful, not related to the principal case, or not a proper basis for an award of fees. He also reduced the rates proposed by the plaintiff's counsel based on the limitations in the Prison Litigation Reform Act, 42 U.S.C. § 1997e(d)(3). He multiplied these rates by the number of hours reasonably expended to obtain a lodestar calculation of $56,372, which he then assessed in light of "the degree of success obtained," Farrar, 506 U.S. at 114, quoting Hensley, 461 U.S. at 436, including "the extent of relief, the significance of the legal issue on which the plaintiff prevailed, and the public purpose served" by the litigation, Farrar, supra at 122 (O'Connor, J., concurring). The judge noted that LaChance did not succeed on all of his claims. Nevertheless, the judge concluded that our ruling in LaChance I constituted a significant victory that served a public purpose by establishing the due process rights of inmates held in administrative segregation. Taking into account these factors and the common core of facts and related legal issues involved, the judge reduced the lodestar calculation by fifty percent "due to the discrepancy between the claims brought and the claims won."

In challenging this award, the defendants emphasize the point that LaChance did not succeed on all his claims. But our holding in LaChance I was nevertheless a substantial victory for LaChance on his most fundamental claim: that his confinement in

administrative segregation without a hearing violated his Federal constitutional right to due process.  It also led to a significant new statement of law, since we announced "for the first time that segregated confinement on awaiting action status for longer than ninety days gives rise to a liberty interest entitling an inmate to notice and a hearing" and a written posthearing decision.  LaChance I, 463 Mass. at 778.  See id. at 776-777.  This was much more than a de minimis success, even when considered in the context of the other goals of LaChance's suit.

The defendants also argue that LaChance's award should have been reduced further because his counsel devoted substantially more effort to his unsuccessful claims than to his successful claims.  In making this argument, the defendants primarily rely on counting the relative number of claims in the pleadings and the relative number of pages in briefs concerning LaChance's successful and unsuccessful theories.  But such a mathematical "ratio provides little aid in determining what is a reasonable fee in light of all the relevant factors."  Hensley, 461 U.S. at 435 n.11.

In sum, given that the Superior Court judge already reduced the award of fees to half of the amount requested in light of the discrepancy between the claims brought and the claims won by LaChance, and considering that "[t]here is no precise rule or

formula" for determining an appropriate fee reduction where, as here, a civil rights plaintiff has achieved only partial success, id. at 436, we conclude that the judge did not abuse his discretion in calculating the award of attorney's fees.

3. Fees awarded on appeal. Both LaChance and the defendants have requested their attorney's fees and costs for this appeal. In light of our rulings above, we conclude that LaChance is also entitled under § 1988 to recover his reasonable attorney's fees and costs incurred in connection with this appeal. See Mendoza, 444 Mass. at 212 n.28, citing Ustrak v. Fairman, 851 F.2d 983, 990 (7th Cir. 1988) (prevailing party entitled to reimbursement of fees incurred in defending trial court's award of fees). We therefore invite LaChance to file with the clerk of this court the appropriate documents detailing and supporting his request for such fees and costs within fourteen days of the issuance of the rescript in this case, in accord with the procedure established in Fabre v. Walton, 441 Mass. 9, 10-11 (2004). The defendants' fee request is denied.

Conclusion. For the reasons stated above, we affirm the award of attorney's fees and costs entered by the judge in favor of LaChance and conclude that LaChance is also entitled under § 1988 to recover his reasonable attorney's fees and costs incurred in connection with this appeal.

So ordered.