NOTICE:  All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports.  If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

SJC-12602

BELKY FERMAN & another[1]  vs.  STURGIS CLEANERS, INC., & another.[2]


Suffolk.     December 4, 2018. - February 19, 2019.

Present:  Gants, C.J., Lenk, Gaziano, Lowy, Budd, Cypher, &
Kafker, JJ.


Massachusetts Wage Act.  Practice, Civil, Attorney's fees.


Civil action commenced in the Superior Court Department on
November 19, 2014.

Following a stipulation of dismissal, an application for
attorney's fees and costs was heard by Karen F. Green, J.

The Supreme Judicial Court granted an application for
direct appellate review.


John J. McGlone, III (David T. Norton also present) for the
defendants.
Elizabeth Soltan (Patricio S. Rossi also present) for the
plaintiffs.
Joseph Michalakes & Liliana Ibara, for Immigrant Worker
Center Collaborative & others, amici curiae, submitted a brief.
Margaret E. Monsell & Ruth A. Bourquin, for Massachusetts
Law Reform Institute & another, amici curiae, submitted a brief.

_____

[1] Veronica Guillen.

[2] Peter Triantos.

KAFKER, J.  This case requires us to consider whether employees, whose claim against their employer under the Wage Act, G. L. c. 149, §§ 148, 150, resulted in a favorable settlement agreement and stipulation of dismissal, "prevailed" in their suit for purposes of an award of attorney's fees and costs under the Wage Act's fee-shifting provisions.[3]  The defendants contend that the trial judge should have applied the test for determining prevailing party status under Federal fee-shifting statutes established by Buckhannon Bd. & Care Home, Inc. v. West Virginia Dep't of Health & Human Resources, 532 U.S. 598 (2001) (Buckhannon).  Because Buckhannon requires a prevailing litigant to obtain judicial approval or "imprimatur" of a private settlement, the defendants argue that the plaintiffs did not prevail.  Id. at 605.  The plaintiffs disagree, arguing that, because we have previously decided that the Buckhannon test has no applicability to Massachusetts fee-shifting statutes, the correct standard to determine prevailing party status under the Wage Act is the "catalyst test."  Under the catalyst test, if the plaintiff's lawsuit is a necessary and important factor in causing the defendant to grant a material

---

[3] The employees brought claims under both G. L. c. 149 and G. L. c. 151, which governs payment of overtime wages.  Because our analysis is the same for both fee-shifting provisions, which are identically worded, for simplicity's sake we refer to the claims as brought under the Wage Act, unless otherwise noted.

portion of the requested relief, a settlement agreement, even without any judicial involvement, may qualify the plaintiff as a prevailing party for fee-shifting purposes. None of the parties disputes that the plaintiffs met the catalyst test; rather, the central issue is the threshold question of the proper test to apply to determine prevailing party status under the Wage Act. We hold that the catalyst test applies to Wage Act claims and that the trial judge correctly found that the plaintiffs satisfied that test in the instant case, and we therefore affirm the award of attorney's fees to the plaintiffs under the fee-shifting provisions of the Wage Act.[4]

1. <u>Facts and procedural history</u>. The facts and procedural posture of this case are not contested. The plaintiffs are former employees of the defendants' dry cleaning business who brought suit in November 2014, claiming that the defendants failed to pay them approximately $28,000 in regular and overtime wages as required by G. L. c. 149, §§ 148 and 150, and G. L. c. 151, §§ 1A and 1B. Both of these chapters confer a private

---

[4] We acknowledge the amicus briefs submitted in support of the plaintiffs by the Immigrant Worker Center Collaborative, the Mental Health Legal Advisors Committee, Community Legal Aid, Inc., the Center for Law and Education, the Disability Law Center, the National Consumer Law Center, Heisler Feldman & McCormick, P.C., and the Suffolk University Law School Accelerator-to-Practice Program; and by the Massachusetts Law Reform Institute and the American Civil Liberties Union of Massachusetts.

right of action on an employee "aggrieved" by an employer's violation of their provisions.[5]  They further provide that "[a]n employee so aggrieved who prevails in such an action shall be awarded treble damages . . . and shall also be awarded the costs of the litigation and reasonable attorneys' fees."  See G. L. c. 149, § 150; G. L. c. 151, § 1B.  In their complaint, the plaintiffs claimed treble damages, as well as costs and attorney's fees.[6]

Following an almost two-year period in which there was the entry and lifting of a default judgment against the defendants, discovery, and the filing of various pretrial motions, the case was scheduled for trial in November 2016.  Several weeks before

---

[5] General Laws c. 149, § 150, permits "[a]n employee claiming to be aggrieved by a violation" of its provisions to "institute and prosecute in his own name and on his own behalf, or for himself and for others similarly situated, a civil action for injunctive relief, for any damages incurred, and for any lost wages and other benefits."  General Laws c. 151, § 1B, allows an employee claiming an overtime pay violation to "institute and prosecute in his own name and on his own behalf, or for himself and for others similarly situated, a civil action for injunctive relief, for any damages incurred, and for the full amount of the overtime rate of compensation less any amount actually paid to him by the employer."  As provided by G. L. c. 149, § 150, the plaintiffs first filed a written complaint with the Attorney General and requested and received written assent to bring a civil suit within ninety days of filing that complaint.

[6] The plaintiffs also asserted breach of contract claims and violations of the Federal Fair Labor Standards Act, 29 U.S.C. §§ 207 and 216(b), but did not claim additional damages with respect to these claims.  The plaintiffs conceded that they had not achieved prevailing party status on these claims.

the trial date, the court referred the parties to mediation. As a result of mediation, the parties executed a memorandum of understanding in which they agreed to settle the case for $20,500, but reserved the issue of the plaintiffs' entitlement to attorney's fees for resolution by the court. The parties then executed a mutual release and settlement agreement that provided that it "is the result of a compromise and that nothing set forth herein constitutes an admission of wrongdoing or liability." Subsequently, the parties filed a stipulation with dismissal in court, agreeing that "[p]ursuant to the Memorandum of Understanding and . . . Mutual Release and Settlement Agreement . . . Plaintiffs may file a Motion for Costs and Attorneys' Fees," following determination of which the matter would be "dismissed with prejudice" and "all rights of appeal . . . waived."[7]

---

[7] The plaintiffs argue that the defendants have waived the right to appeal the issue of attorney's fees because the mutual release and settlement agreement says that the parties "agree to abide by the decision of the Court with regard to [the attorney's fees] petition." Given the result we reach today in favor of the plaintiffs, we need not resolve the issue whether the defendants waived their right to appeal altogether. We also note that we took the case on direct appellate review, and sought amicus briefing, to resolve the important, unresolved issue of the appropriate standard to apply for attorney's fees petitions under the Wage Act. Cf. New Bedford Hous. Auth. v. Olan, 435 Mass. 364, 372 (2001) (despite waiver of issue, "[b]ecause there is some uncertainty over the question, because it involves a matter of public interest that is likely to arise in the future, and where the issue has been fully briefed, we will address the issue").

In their motion for attorney's fees, filed in February 2017, the plaintiffs claimed approximately $40,000 in attorney's fees and $1,000 in costs.  The defendants opposed the motion. The judge concluded that the catalyst test and not the Buckhannon test applied to Massachusetts fee-shifting statutes. Applying the catalyst test, the judge found that the parties' agreement, which amounted to approximately seventy percent of the plaintiffs' initially demanded monetary relief, resulted "in a practical benefit as a result of their attorneys' efforts." This made the plaintiffs "prevailing parties" for purposes of an award of attorney's fees and costs.  The judge granted the plaintiffs' motion with respect to $16,153 in attorney's fees and the entire amount of costs.[8]  This appeal followed.

2.  Analysis.  Whether a plaintiff is a "prevailing party" for purposes of a statutorily authorized award of attorney's fees "is an issue of law that we consider de novo."  LaChance v. Commissioner of Correction, 475 Mass. 757, 764 (2016), quoting Newell v. Department of Mental Retardation, 446 Mass. 286, 298, cert. denied, 549 U.S. 823 (2006).  To determine whether the plaintiffs here were prevailing parties, the defendants argue that the trial judge should not have defaulted to the catalyst

---

[8] The judge deducted claimed attorney's fees as to certain precomplaint work and motions, as well as to work relating to the claim under 29 U.S.C. § 207, as to which she found that the plaintiffs did not prevail.

test, but rather should have considered whether, as required by Buckhannon, there was a "material alteration of the legal relationship of the parties" (citation omitted) and a "judicial imprimatur on the change." Buckhannon, 532 U.S. at 604-605. The plaintiffs are correct, however, that we have expressly "rejected the application of Buckhannon . . . and its progeny to fee requests under Massachusetts fee-shifting statutes or other Massachusetts authority." Brown v. F.L. Roberts & Co., 452 Mass. 674, 689 (2008), citing T & D Video, Inc. v. Revere, 450 Mass. 107, 115 n.21 (2007).[9] Consequently, the question is not whether the Buckhannon test or the catalyst test applies, but whether the catalyst test or another, previously undefined test applies. If the catalyst test applies, we have nothing further to decide, because the defendants concede that the plaintiffs

---

[9] Of course, as required by Buckhannon, we no longer consider the catalyst test as a "permissible basis" for determining prevailing party status under Federal fee-shifting statutes. Buckhannon Bd. & Care Home, Inc. v. West Virginia Dep't of Health & Human Resources, 532 U.S. 598, 610 (2001). See LaChance v. Commissioner of Correction, 475 Mass. 757, 765 (2016); Newell v. Department of Mental Retardation, 446 Mass. 286, 297-299, cert. denied, 549 U.S. 823 (2006); Mendoza v. Licensing Bd. of Fall River, 444 Mass. 188, 211-212 (2005). See also Nogeiro v. Commissioner of the Dep't of Transitional Assistance, 72 Mass. App. Ct. 496, 499 (2008). Yet "we are not . . . bound by interpretations of the Federal statute in construing our own State statute." College-Town, Div. of Interco, Inc. v. Massachusetts Comm'n Against Discrimination, 400 Mass. 156, 163 (1987).

prevail under the catalyst test, and do not contest the amount awarded pursuant to that test.[10]

We conclude, as did the motion judge, that there are only two well-defined alternatives for determining whether a negotiated settlement arising under a fee-shifting statute qualifies a litigant as a prevailing party: the catalyst test, which only requires the lawsuit "to be a catalyst for a defendant's voluntary change in conduct"; and the Buckhannon test, which states that the judge must take an additional step and "at least impose its judicial sanction on the agreed-upon material change in the legal relationship."  Nogeiro v. Commissioner of the Dep't of Transitional Assistance, 72 Mass. App. Ct. 496, 499 (2008).  Although we have never expressly applied the catalyst test to determine prevailing party status under a State fee-shifting statute, we have, as previously stated, expressly rejected the alternative.  In this case, we take the logical next step and conclude that the catalyst test applies in the context of determining prevailing parties under the Wage Act.  We do so for the following reasons.

We begin with the "two major purposes" of statutory fee-shifting provisions:  "First, they act as a powerful

---

[10] As discussed infra, even if the matter were not conceded, we would conclude that the catalyst test is satisfied here and the amounts properly calculated.

disincentive against unlawful conduct. Second, they often provide an incentive for attorneys to provide representation in cases that otherwise would not be financially prudent for them to take on, and in that sense they help to assure that claimants who might not be able to afford counsel, or whose claims are too small to warrant an expenditure of funds for counsel, will be represented." Commonwealth v. Augustine, 470 Mass. 837, 842 (2015). See Buckhannon, 532 U.S. at 623 (Ginsburg, J., dissenting) (rejection of catalyst test will "impede access to court for the less well heeled, and shrink the incentive . . . created" by fee-shifting statutes enforced by private attorneys general). It is for these reasons that the Legislature included such provisions in select statutes such as the Massachusetts Civil Rights Act, G. L. c. 12 § 11I, and the Massachusetts consumer protection act, G. L. c. 93A, §§ 9 and 11, as well as the wage laws at issue here. See Augustine, supra (citing these and other statutes containing fee-shifting provisions).

The catalyst test promotes both purposes, and does so more vigorously than the Buckhannon test. See Albiston & Nielsen, The Procedural Attack on Civil Rights: The Empirical Reality of Buckhannon for the Private Attorney General, 54 U.C.L.A. L. Rev. 1087, 1121, 1130 (2007) (Buckhannon discourages public interest organizations from representing plaintiffs in enforcement actions). In particular, the catalyst test provides for

attorney's fees if a party's lawsuit was a "necessary and important factor" in causing the defendant to provide a material portion of the requested relief, but does not require litigation to a final judicial determination or other judicial imprimatur. Handy v. Penal Insts. Comm'r of Boston, 412 Mass. 759, 765 (1992).[11]

The catalyst test thus recognizes that successful litigation may be reflected in settlements as well as court rulings, as settlements are often "the products of pressure exerted by [a] lawsuit." Id. Cf. DeSalvo v. Bryant, 42 P.3d 525, 530 (Alaska 2002) (catalyst test, rather than Buckhannon, applies to determine prevailing party status under State fee-shifting statute because "[e]ven without formal judicial relief, many plaintiffs achieve the goals of their litigation"). Importantly, the catalyst test prevents an employer from

---

[11] At the same time, the catalyst test does not reward frivolous suits or nuisance settlements. The original case that set out the catalyst test in the United States Court of Appeals for the First Circuit explained that not only must the plaintiff's lawsuit be "causally related to the defendants' actions," but the defendants also must not have "acted gratuitously" by settling a lawsuit that was "frivolous, unreasonable, or groundless." Nadeau v. Helgemoe, 581 F.2d 275, 281 (1st Cir. 1978), quoting Christiansburg Garment Co. v. Equal Employment Opportunity Comm'n, 434 U.S. 412, 422 (1978). The First Circuit later suggested that the inquiry is whether the relief obtained by the plaintiff was "material[]" and not "de minimis." Pearson v. Fair, 980 F.2d 37, 44-45 (1st Cir. 1992). We conclude that a materiality analysis better identifies and rewards meritorious legal work, distinguishing it from frivolous suits that may nonetheless result in nuisance settlements.

escaping liability for attorney's fees by an "eleventh hour" settlement of a meritorious case.  See Buckhannon, 532 U.S. at 636 n.10 (Ginsburg, J., dissenting), quoting Vermont Low Income Advocacy Council v. Usery, 546 F.2d 509, 513 (2d Cir. 1976) (Congress did not intend fee-shifting statute to be evaded by "eleventh hour" compliance).  See also Albiston & Nielsen, supra at 1091, 1130 (presenting empirical evidence that Buckhannon increased occurrences of "strategic capitulation" in which "defendants faced with likely adverse judgments attempt to moot the case and to defeat the plaintiff's fee petition by providing the requested relief before judgment").  If such settlements did not result in the obligation to pay attorney's fees, there would be a disincentive to bring such cases in the first place, thereby leaving other unlawful conduct unaddressed and uncorrected.  See id. at 1130.  Consequently, the catalyst test best promotes the purposes of fee-shifting statutes by encouraging attorneys to take cases under such statutes to correct unlawful conduct and rewarding them accordingly when they do so.  See Augustine, 470 Mass. at 842.  See also Buckhannon, 532 U.S.at 623 (Ginsburg, J., dissenting) (explaining that catalyst test encourages enforcement by "private attorneys general").

The catalyst test also promotes the prompt settlement of meritorious cases, avoiding the need for protracted litigation,

superfluous process, or unnecessary court involvement solely to "prevail" in a formalistic sense to ensure an award of attorney's fees and costs.  Cf. Graham v. DaimlerChrysler Corp., 34 Cal. 4th 553, 573 (2004), as modified (Jan. 12, 2005) (catalyst test, rather than Buckhannon, applies to determine prevailing party status under State fee-shifting statute in part because catalyst test encourages judicial economy).  It also provides a disincentive for defendants to stretch out cases and delay settlement for strategic advantage, as they would only be increasing the legal fees they would ultimately be required to pay.  See Buckhannon, 532 U.S. at 639 (Ginsburg, J., dissenting) ("the longer the litigation, the larger the fees").  See also Albiston & Nielsen, supra at 1130 ("qualitative data" suggests that shift from catalyst to Buckhannon test has made settlement more difficult and prolonged litigation).

The statutory language, structure, purpose, and history all confirm that the catalyst test is the correct standard to apply to the Wage Act.  The Legislature specifically included fee-shifting provisions in the Wage Act to ensure its "rigorous enforcement" by private parties.  Lipsitt v. Plaud, 466 Mass. 240, 247 (2013).  As small amounts were often at stake, and employees otherwise lacked the resources to hire counsel, the fee-shifting provisions were deemed necessary to serve the act's purpose, which was "to prevent the unreasonable detention of

wages" by "unscrupulous employers" (citation omitted).  Id. at
245.  The fee-shifting provisions thus provide both a necessary
incentive for attorneys to take such cases and a powerful
disincentive for employers to withhold the wages in the first
place.  Prompt resolution of such cases is also highly valued as
the timely payment of wages is a critical component of the Wage
Act.  See id. at 251 ("Legislature's intent behind the Wage Act
that employees receive timely payment of wages" [citation
omitted]).  For this reason, it is especially important to
encourage settlement of such cases, and to provide attorney's
fees for such settlements.  Thus, all the rationales discussed
above supporting the application of the catalyst test to fee-
shifting statutes in general directly apply to the Wage Act.[12]

The timing of the passage of the private right of action
and accompanying fee-shifting provisions of the Wage Act
provides further confirmation.  The fee-shifting provisions of
the Wage Act were enacted before Buckhannon, at a time when the
catalyst test was the standard that courts applied under Federal

---

[12] This conclusion accords with that of other States, which
have expressly concluded that, following Buckhannon, the
catalyst test still applies to determine prevailing party status
for purposes of an award of attorney's fees under State fee-
shifting statutes.  See, e.g., DeSalvo v. Bryant, 42 P.3d 525,
530 (Alaska 2002) (wage detention statute); Tipton-Whittingham
v. Los Angeles, 34 Cal. 4th 604, 608 (2004) (Fair Employment and
Housing Act); Bonanno v. Verizon Business Network Sys., 196 Vt.
62, 72 (2014) (workers' compensation statute).

fee-shifting statutes.[13]  More specifically, at that time, we recognized that the catalyst test allowed a negotiated settlement to confer prevailing party status.[14]  We therefore

---

[13] There has been a fee-shifting provision in G. L. c. 151, § 1B, since its enactment in 1962.  St. 1962, c. 371.  The present text of the private right of action and accompanying fee-shifting provision of G. L. c. 149, § 150, was enacted in 1993.  St. 1993, c. 110, § 182.  In 2008, the Legislature amended the fee-shifting provision of G. L. c. 151, § 1B, to conform to that of G. L. c. 149, § 150.  St. 2008, c. 80, § 6.  When the 1993 fee-shifting provision was enacted, prior to Buckhannon, the First Circuit and almost every other Federal Court of Appeals recognized the catalyst test.  See Buckhannon, 532 U.S. at 602.  See also Newell, 446 Mass. at 303 (before Buckhannon decision, catalyst test recognized basis for award of attorney's fees).  Accordingly, we recognized the catalyst test as a proper basis for awards of attorney's fees under Federal statutes.  See Guardianship of Hurley, 394 Mass. 554, 559 & n.6 (1985), quoting Nadeau, 581 F.2d at 278-279, and Coalition for Basic Human Needs v. King, 691 F.2d 597, 599 (1st Cir. 1982) ("Individuals prevail 'for attorney's fees purposes if they succeed on any significant issue in litigation which achieves some of the benefit the parties sought in bringing suit' or 'when plaintiff's lawsuit acts as a "catalyst" in prompting defendants to take action to meet plaintiff's claims'"; "[These] two tests are separate and distinct; satisfying either of them is sufficient to qualify a party as prevailing").  See also cases cited in note 14, infra.

[14] See Handy v. Penal Insts. Comm'r of Boston, 412 Mass. 759, 764-765 (1992) (plaintiff prisoners who entered into settlement requiring defendants to improve prison conditions were "prevailing parties" for purposes of award of attorney's fees under 42 U.S.C. § 1988 [1988], because their "lawsuit was a necessary and important factor" in causing defendants to settle and thus "catalyst that prompted change").  See also Draper v. Town Clerk of Greenfield, 384 Mass. 444, 452-453 (1981), cert. denied sub nom. Draper v. Prescott, 456 U.S. 947 (1982) (plaintiffs' negotiated settlement qualified them as prevailing parties under 42 U.S.C. § 1988 because they satisfied criteria of catalyst test as established by First Circuit in Nadeau, 581 F.2d at 278-279).

discern no reason why the Legislature would have thought another standard was appropriate for Massachusetts fee-shifting statutes when it enacted the fee-shifting provisions of the Wage Act.[15] See Commonwealth v. Mogelinski, 466 Mass. 627, 646 (2013) ("We presume that the Legislature enacts legislation with an aware[ness] of the prior state of the law as explicated by the decisions of this court" [citation omitted]).

For all the foregoing reasons, we conclude that a plaintiff prevails for purposes of an award of attorney's fees under the Wage Act when his or her suit satisfies the catalyst test by acting as a necessary and important factor in causing the defendant to provide a material portion of the relief demanded in the plaintiff's complaint. Here, the criteria of the catalyst test are met because, as the trial judge correctly found, the plaintiffs' lawsuit caused the defendants to provide approximately seventy percent of the plaintiffs' monetary demands, which is clearly a material portion. Because the

---

[15] See Batchelder v. Allied Stores Corp., 393 Mass. 819, 821-822 (1985) ("Legislature intended 'prevail' to have the same meaning" under G. L. c. 12, § 11I, as under analogous Federal fee-shifting statute at time, 42 U.S.C. § 1988, because "Legislature is presumed to have been aware of the use and meaning of this term in the Federal statute"). See also Cronin v. Tewksbury, 405 Mass. 74, 75-76 (1989) (relying on case law interpreting prevailing party status under 42 U.S.C. § 1988 to determine whether plaintiffs prevailed under G. L. c. 12, § 11I).

plaintiffs prevailed for purposes of an award of attorney's fees the Wage Act, we affirm the award.

3. <u>Award of appellate attorney's fees and costs</u>. A party that prevails on a Wage Act claim "is statutorily entitled to recover reasonable appellate attorney's fees and costs with respect to the claims on which he prevailed." <u>Fernandes</u> v. <u>Attleboro Hous. Auth</u>., 470 Mass. 117, 132 (2014). The party must have made the request for appellate attorney's fees in its brief. <u>Fabre</u> v. <u>Walton</u>, 441 Mass. 9, 10 (2004). Because the plaintiffs made such a request in their briefing, they may file a request for appellate attorney's fees and costs with this court in accordance with the procedure described in <u>Fabre</u>, <u>supra</u>.

4. <u>Conclusion</u>. For the foregoing reasons, we affirm the trial judge's award of attorney's fees to the plaintiffs.

<u>So ordered</u>.