NOTICE:  Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale.  Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent.  See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

25-P-369

YARI JUSINO

vs.

MASSACHUSETTS CHIROPRACTIC CENTER, LLC, & another.[1]

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

The plaintiff, Yari Jusino, appeals from a summary judgment entered by a judge of the Boston Municipal Court in favor of the defendants Massachusetts Chiropractic Center, LLC (MCC), and Boris Sapozhnikov.[2]  The plaintiff argues that genuine issues of material fact exist as to whether a check dated June 7, 2019, that the defendants tendered to her represented the full amount of damages they owed her under the Wage Act, G. L. c. 149, §§ 148, 150.  Having carefully reviewed the record before us, we discern no such genuine issue of material fact.  The plaintiff

---

[1] Boris Sapozhnikov.

[2] MCC is defunct and has not filed a brief.

further argues that she is entitled to attorney's fees under the test adopted in Ferman v. Sturgis Cleaners, Inc., 481 Mass. 488, 496 (2019), a question not decided below. We remand only for a determination whether the filing of the complaint was the catalyst for the defendants' tendering the June 7 check to the plaintiff, and thus the plaintiff was the prevailing party in the Wage Act action within the meaning of G. L. c. 149, § 150; we otherwise affirm the judgment.

Background. These facts are not in dispute. In early 2019, MMC was a chiropractic practice in Boston. Sapozhnikov was its manager and was solely responsible for payroll obligations. The plaintiff worked at MMC as a patient care coordinator.

Beginning on April 8, 2019, Sapozhnikov was hospitalized for several weeks and underwent quadruple bypass heart surgery on April 17. Because of his medical condition, MCC did not timely pay the plaintiff for the pay period ending on April 19.

On April 23, 2019, the plaintiff resigned from employment with MCC. Under the Wage Act, MCC was required to pay her "in full on the following regular pay day."[3] G. L. c. 149, § 148.

_____

[3] The summary judgment record does not reveal what date after April 23, 2019, was the "following regular pay day," but the defendants concede that they did not pay the plaintiff the wages they owed her by that date.

Also on April 23, MCC ceased operations.  In late April, the plaintiff sent Sapozhnikov multiple text messages asking when she would receive her outstanding wages.

On May 9, 2019, the plaintiff filed in the Boston Municipal Court a complaint against both MCC and Sapozhnikov for violations of the Wage Act, and against MCC for breach of contract and unjust enrichment.  The complaint alleged that "[t]o date, MCC owes [the plaintiff] approximately $1,410 in unpaid wages," and sought "[t]reble damages, interest, reasonable attorneys' fees, and costs pursuant to . . . G. L. c. 149, § 150."

The next day, May 10, 2019, the plaintiff sent an e-mail message to Sapozhnikov.  She made no mention of the complaint, but stated:

> "I am reaching out to you as I would like an update.  Again this is not fair I have to send several messages regarding my wages.  I am owed for both [MCC] and Union.  I worked a total of 94 hours between the two clinic[s] that I have not been paid for.  The total amount due is $1,410.  I understand you went through surgery but it seems to [m]e I am being avoided and I don't understand why.  Please if you can pay me my wages I would really appreciate it.  You now have me behind on my bills especially I am now without a job so suddenly."

On June 7, 2019, the defendants issued a check to the plaintiff in the net amount of $902.47, after withholdings from gross wages of $1,586.  The plaintiff received the check.  Bank

3

records show that the check was cashed on June 24, and the back of the check was endorsed with the plaintiff's signature.[4]

The defendants filed a motion for summary judgment, supported by a memorandum of law, an affidavit of Sapozhnikov, and exhibits, arguing that by the June 7 check they had already paid the plaintiff more than the outstanding wages and treble damages to which she was entitled under the Wage Act.  In opposition, the plaintiff submitted an affidavit averring that "[t]o date, I have not received the funds from the check dated June 7."  A judge held a hearing, of which no transcript is included in the appellate record.

A few days later, the plaintiff filed a supplemental affidavit averring, "I do not recall ever cashing the check dated June 7," and, "[t]o date, I am informed and believe I have not received the funds from the check dated June 7."  The judge allowed the motion for summary judgment in favor of the defendants.  The plaintiff moved for reconsideration, which the judge denied in a memorandum in which he concluded that the plaintiff's assertions that she had not cashed the June 7 check were "implausible and not credible," and that the defendants had "issued a treble wages payment to the plaintiff in June 2019"

---

[4] Bank records show that the check bounced on June 20 and then was cashed on June 24.

and thus "complied with the liquidated damages clause of the Wage Act."

The plaintiff appealed to the Appellate Division, which concluded that in the June 7 check the plaintiff had "received payment for wages earned plus treble damages," and affirmed the allowance of summary judgment in favor of the defendants. The plaintiff now appeals to this court.

Discussion. We review de novo a ruling on summary judgment to determine if "there is no genuine issue as to any material fact" and the moving parties are "entitled to a judgment as a matter of law." Mass. R. Civ. P. 56 (c), as amended, 436 Mass. 1404 (2002). See Nunez v. Syncsort Inc., 496 Mass. 706, 709 (2025). In examining the summary judgment record, we "view[] the evidence in the light most favorable to the nonmoving or opposing party," here, the plaintiff. Jinks v. Credico (USA) LLC, 488 Mass. 691, 704 (2021). Because the plaintiff would have the burden of proof at trial, the defendants are "'entitled to summary judgment if [they] demonstrate[], by reference to material described in Mass. R. Civ. P. 56(c), unmet by countervailing materials, that the [plaintiff] has no reasonable expectation of proving an essential element of [her] case.'" Id., quoting Kourouvacilis v. General Motors Corp., 410 Mass. 706, 716 (1991). "In reviewing a motion for summary judgment, an appellate court is confined to an examination of the

materials before the [trial] court at the time the rulings were made" (quotation and citations omitted).  Stone v. Zoning Bd. of Appeals of Northborough, 496 Mass. 366, 379 (2025).  "Thus, it is important on appeal, just as it was before the [Boston Municipal] Court judge, that the parties provide an appropriate and accurate record reference for each and every fact set forth in the brief" (quotation and citations omitted).  Jinks, supra at 705.

1.  June 7 check.  The plaintiff argues that summary judgment was inappropriate because genuine disputes of material fact exist as to whether she cashed the June 7 check and whether its amount accurately reflected the wages and treble damages the defendants owed her under the Wage Act, G. L. c. 149, § 150. See Reuter v. Methuen, 489 Mass. 465, 469-470 (2022).

a.  Receipt and cashing of check.  The plaintiff argues that a dispute of fact exists as to whether "the [d]efendants made the [June 7] check funds available to [her]."  However, in her first affidavit opposing summary judgment, the plaintiff acknowledged that she received the check "on or around June 7," and she concedes in her brief that "it appears someone did . . . negotiate the check."  Based on those concessions, her claim fails.  The Wage Act requires the employer only to pay the

employee; it does not impose any responsibility on the employer for what the employee does with the check.[5]

The plaintiff did not demonstrate a genuine issue of material fact with her affidavit averring, "I am informed and believe I have not received the funds from the check dated June 7." "Because it is not based on personal knowledge, the statement in the affidavit is not admissible evidence." Ortiz v. Morris, 97 Mass. App. Ct. 358, 364-365 (2020). "Conclusory statements, general denials, and factual allegations not based on personal knowledge [are] insufficient to avoid summary judgment" (citation omitted). Madsen v. Erwin, 395 Mass. 715, 721 (1985). See Matter of the Estate of Urban, 102 Mass. App. Ct. 284, 297 & n.15 (2023).

We conclude that the summary judgment record shows that the plaintiff had no reasonable expectation of proving at trial that she did not receive the June 7 check.

b. Rate of pay. A June 2019 payroll record of MCC associated with the June 7 check and the affidavit of

---

[5] In his memorandum of decision, the judge noted that at the summary judgment hearing the plaintiff asserted that she may have dropped the check and someone else picked it up and cashed it. However, the plaintiff did not allege those facts in an affidavit as required by Mass. R. Civ. P. 56 (e), 365 Mass. 824 (1974), and so they were "ineligible for consideration in a Rule 56 motion" (quotation and citations omitted). Bardige v. Performance Specialists, Inc., 74 Mass. App. Ct. 99, 103 (2009).

7

Sapozhnikov document that the plaintiff's hourly rate of pay was thirteen dollars. In contrast, in her supplemental affidavit dated March 21, 2024, filed after the summary judgment hearing, the plaintiff averred that her hourly rate was fifteen dollars. We conclude that the plaintiff did not create a genuine dispute of fact with that affidavit, dated nearly five years after she left MCC's employ, claiming a different rate of pay than that in its records. See Cannata v. Berkshire Natural Resources Council, Inc., 73 Mass. App. Ct. 789, 792 (2009) ("the opposing party cannot rest on his or her pleadings and mere assertions of disputed facts to defeat the motion for summary judgment" [citation omitted]). See also Knous v. Broadridge Fin. Solutions, Inc., 991 F.3d 344, 346-347 (1st Cir. 2021) (summary judgment for employer on Wage Act claim proper; no dispute as to May 24 date of discharge based on employee's averment that, though employer paid him through that date, it terminated his employment on May 17 when manager told him he was being "let go immediately").

c. Number of hours worked. In denying the plaintiff's motion for reconsideration of the summary judgment, the judge concluded that "the defendants paid the plaintiff the damages she is entitled to under the Wage Act." Implicit in that conclusion is a finding that the defendants paid the plaintiff for the number of hours she worked for MCC.

8

MCC's payroll records document that MCC owed the plaintiff wages for working 75.5 hours between March 25 and April 22, 2019.  In contrast, the plaintiff averred that she "worked approximately 94 hours for which I was not compensated."  However, the plaintiff's own documentation of those ninety-four hours included three dates (April 9, 11, and 16, 2019) that she said she worked for an entity she referred to as "Union."  MCC's payroll records do not reflect that the plaintiff worked for MCC on any of those three dates.  The plaintiff's complaint does not mention any entity called "Union," nor name it as a defendant.  In those circumstances, we discern no genuine dispute of material fact as to the number of hours the plaintiff worked for MCC.  See Cannata, 73 Mass. App. Ct. at 792; Knous, 991 F.3d at 346-347.

d.  Late wages and treble damages.  Both the judge and the Appellate Division concluded that the amount of the June 7 check included both wages and treble damages under the Wage Act, G. L. c. 149, § 150.  The plaintiff argues that a dispute of fact exists as to whether the June 7 check included treble damages, but has not provided us with the complete summary judgment record that was before the judge and the Appellate Division

9

showing how the defendants calculated the damages they owed to the plaintiff under the Wage Act.[6]

Our own review of the summary judgment materials reveals that the defendants calculated the wages they owed to the plaintiff as $481.50.[7]  Treble that amount is $1,444.50.  Thus, the June 7 check for $1,586 in gross wages was more than the treble damages amount.

The plaintiff further argues that the Wage Act precludes the defendants from asserting as a defense that by tendering the June 7 check, they paid her what they owed her.  Section 150 provides that "[o]n the trial [of a Wage Act claim] . . . [t]he defendant shall not set up as a defence a payment of wages after the bringing of the complaint."  G. L. c. 149, § 150.  That section further provides that a plaintiff in a Wage Act action "shall be awarded treble damages, as liquidated damages, for any lost wages."  G. L. c. 149, § 150.  The weakness in the plaintiff's argument is that the June 7 check compensated her

---

[6] As appellant, it was the plaintiff's duty to provide us with copies from the trial court record of the rule 56(c) materials that the defendants submitted in support of their motion for summary judgment.  See Mass. R. A. P. 18 (a), as appearing in 481 Mass. 1637 (2019).

[7] That amount was based on 75.5 hours at the thirteen-dollar hourly rate, less $500 that the defendants had paid the plaintiff in a cash advance on April 3, 2019.  At oral argument, the plaintiff represented through counsel that she did not dispute that $500 cash advance.

10

for not only the "payment of wages" that the defendants owed her, but also for "treble damages," G. L. c. 149, § 150. Contrast Reuter, 489 Mass. at 473 (employer's tender of trebled interest, but not trebled late vacation pay, did not satisfy § 150). The plaintiff would have us interpret § 150 to mean that, no matter what amount the defendants paid her, they could not raise that payment as a defense.

No genuine issue of material fact exists as to whether the defendants paid the plaintiff her outstanding wages and treble damages under the Wage Act.

2. Breach of contract and unjust enrichment. The plaintiff argues that MCC was not entitled to summary judgment on her claims for breach of contract and unjust enrichment. As we have concluded that no genuine issue of material fact exists as to whether the June 7 check fulfilled the defendants' obligation under the Wage Act, we likewise conclude that the June 7 check precludes their liability on the breach of contract and unjust enrichment claims. See Columbia Plaza Assocs. v. Northeastern Univ., 493 Mass. 570, 588-589 (2024) ("Unjust enrichment is the retention of money or property of another against the fundamental principles of justice or equity and good conscience" [quotation and citation omitted]).

3. Attorney's fees. The plaintiff argues that she is entitled to attorney's fees under the Wage Act. In response,

11

Sapozhnikov argues that an award of attorney's fees to the plaintiff would not be "reasonable" within the meaning of G. L. c. 149, § 150, because of the extenuating circumstances of Sapozhnikov's health crisis. We are not persuaded by Sapozhnikov's response. As to liquidated damages, including treble damages for lost wages, the Wage Act imposes "strict liability" on an employer, "without regard to the employer's intent." See Reuter, 489 Mass. at 470-471. Accordingly, we turn to our own de novo review of the Wage Act as it pertains to payment of attorney's fees.

The Wage Act provides that "[a]n employee . . . who prevails" in a civil action for a violation of the Wage Act "shall . . . be awarded the costs of the litigation and reasonable attorneys' fees." G. L. c. 149, § 150. In Ferman, 481 Mass. at 496, the Supreme Judicial Court adopted the catalyst test for determining whether a plaintiff is considered to have "prevail[ed]" in a Wage Act action and is therefore entitled to attorney's fees. In that case, after nearly two years of litigation, the parties settled the plaintiffs' claims for regular and overtime wages, but reserved to the judge the question whether the plaintiffs were entitled to attorney's fees under the Wage Act. Id. at 489-490. Applying the catalyst test, the judge ruled that the plaintiffs were entitled to attorney's fees because the settlement yielded approximately

12

seventy percent of the damages they had sought in their complaint, and constituted "a practical benefit as a result of their attorneys' efforts."  Id. at 491.  In affirming the award, the Supreme Judicial Court set forth the catalyst test as follows:

> "[A] plaintiff prevails for purposes of an award of attorney's fees under the Wage Act when his or her suit satisfies the catalyst test by acting as a necessary and important factor in causing the defendant[s] to provide a material portion of the relief demanded in the plaintiff's complaint."

Id. at 496.  Quoting that language from Ferman, the plaintiff argues that because the June 7 check included "'a material portion' of her treble damages after the filing of her [c]omplaint, it follows that the filing of her [c]omplaint was a necessary and important factor in causing that payment."  We are not persuaded, because temporal proximity alone does not prove that one event caused the other.  See Osborne-Trussell v. Children's Hosp. Corp., 488 Mass. 248, 264 n.17 (2021).

From the record before us, it does not appear that either the judge or the Appellate Division addressed the question whether the filing of the complaint was a necessary and important factor in causing the defendants to issue the June 7 check, which would make the plaintiff the prevailing party for the purposes of an award of attorney's fees under G. L. c. 149, § 150.  On the record before us, we cannot make that

13

determination in the first instance.  The plaintiff's e-mail message to Sapozhnikov on May 10, 2019, the day after the complaint was filed, did not mention the complaint.  The Boston Municipal Court docket reflects that MCC was served with the Wage Act complaint on June 20, 2019, and Sapozhnikov was served in August 2019.  At oral argument, the plaintiff could point to no evidence in the summary judgment record to show that when the defendants tendered the June 7 check, they knew about the complaint.  Thus, from this record, it is unclear whether the catalyst for the issuance of the June 7 check was the Wage Act action, Sapozhnikov's recovery from surgery, the plaintiff's e-mail and text messages, or some combination of those factors.  Contrast Ferman, 481 Mass. at 491 (catalyst test satisfied where judge found that attorneys' efforts resulted in settlement).  We therefore remand to the trial court the question whether the Wage Act action was "a necessary and important factor in causing" the defendants to pay the plaintiff her outstanding wages and treble damages.  Id. at 496.  Cf. Reuter, 489 Mass. at 475-476 (remanding for determination whether plaintiff was prevailing party on so much of claim for attorney's fees as expended in unsuccessful attempts to certify class).[8]

---

[8] The plaintiff's request for appellate attorney's fees is denied.

4. Conclusion. So much of the judgment as denied the plaintiff attorney's fees is vacated. We remand the matter for reconsideration of attorney's fees consistent with this memorandum and order. The judgment is otherwise affirmed.

So ordered.

By the Court (Blake, C.J.,
 Neyman & Grant, JJ.[9]),

Clerk

Entered: January 14, 2026.

---

[9] The panelists are listed in order of seniority.