NOTICE:  All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports.  If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

SJC-13787


  ANDRES HIDALGO  vs.  WATCH CITY CONSTRUCTION CORP. & another.[1]



        Middlesex.     December 5, 2025. – March 25, 2026.

    Present:  Budd, C.J., Gaziano, Kafker, Wendlandt, Georges,
                  Dewar, & Wolohojian, JJ.



"Anti-SLAPP" Statute.  Practice, Civil, Attorney's fees, Appeal,
     Motion to dismiss.  Massachusetts Wage Act.




     Civil action commenced in the Waltham Division of the
District Court Department on March 17, 2021.

     A special motion to dismiss was heard by Ellen M. Caulo,
J., and a motion for reconsideration was also heard by her.

     Following review by the Appeals Court, 105 Mass. App. Ct.
148 (2024), motions for appellate attorney's fees and for
reconsideration were considered by a panel of that court, and
the Supreme Judicial Court granted leave to obtain further
appellate review.


     David E. Belfort (Robert S. Mantell also present) for the
plaintiff.
     Elliott M. Loew for the defendants.
     Ellen J. Messing, Raven Moeslinger, Lucas Newbill, Oren
Sellstrom, & Mirian Albert, for Massachusetts Employment Lawyers
Association & another, amici curiae, submitted a brief.


_____

     [1] Mainor Ariel Zepeda.

KAFKER, J.  This appeal concerns an award of appellate attorney's fees under G. L. c. 231, § 59H, more commonly known as the "anti-SLAPP" statute.  The plaintiff, Andres Hidalgo, sued his employer, Watch City Construction Corp., and its owner, Mainor Ariel Zepeda (collectively, Watch City), for violations of the Wage Act, G. L. c. 149, §§ 148-150, and related counts (Wage Act claims).  Watch City brought counterclaims against Hidalgo for, inter alia, abuse of process and malicious prosecution.  In response, Hidalgo filed and, after an interlocutory appeal, ultimately prevailed on a special motion to dismiss the counterclaims pursuant to the anti-SLAPP statute. Hidalgo thereafter sought appellate attorney's fees and costs for the anti-SLAPP work, using the "lodestar" method as the basis of his request -- that is, multiplying the number of hours reasonably spent by reasonable hourly rates.  He did not seek to recover attorney's fees for any legal work regarding the Wage Act claims, which have not yet been tried.  In its order, the Appeals Court panel assumed the hours and rates were reasonable for the anti-SLAPP work but nevertheless halved the fee award because it concluded the award was disproportionate to the relatively low amount of damages at stake in Hidalgo's Wage Act

claims.[2]  We granted Hidalgo's application for further appellate review, limited to the issue of appellate attorney's fees.

We conclude that the Appeals Court panel erred in reducing the attorney's fee award for the anti-SLAPP work performed on appeal.  As we have previously emphasized, the lodestar method for determining the amount of attorney's fees is a reasonable number of hours multiplied by a reasonable rate for the work performed.  Here, having found that the number of hours spent and the rates charged regarding the anti-SLAPP motion on appeal were reasonable, particularly because the legal issues regarding anti-SLAPP are notoriously difficult, it was an abuse of discretion to use the monetary value of the Wage Act claims, for which no legal fees were sought, as the basis for reducing the attorney's fees to be awarded for the anti-SLAPP work.[3]

1.  Background.  Hidalgo worked for Watch City as an hourly general laborer.  On March 17, 2021, Hidalgo filed a six-count civil action in the District Court against Watch City for violations of the Wage Act, G. L. c. 149, §§ 148-150, and

---

[2] Specifically, the panel stated that the hours worked "appear to be reasonable" and that "the rates identified could be appropriate."  The panel queried whether the junior lawyer's rate was high, but it noted that its award "should not be construed as challenging the 'market rates' claimed by plaintiff's counsel."

[3] We acknowledge the amicus brief submitted by Massachusetts Employment Lawyers Association and Lawyers for Civil Rights.

related claims, alleging that Watch City failed to pay him for four weeks of work.  He sought $3,738.67 in lost wages, which amounted to $11,216.01 when trebled under the Wage Act, see G. L. c. 149, § 150.  Watch City denied the allegations in its answer and brought counterclaims against Hidalgo for, inter alia, abuse of process and malicious prosecution.  Hidalgo filed a special motion to dismiss the counterclaims under the anti-SLAPP statute, arguing that the counterclaims were based solely on his petitioning activity (i.e., his filing of the lawsuit to recover his wages).  The motion judge denied Hidalgo's anti-SLAPP motion,[4] and Hidalgo filed an interlocutory appeal with the Appeals Court.  See Fabre v. Walton, 436 Mass. 517, 521-522 (2002), S.C., 441 Mass. 9 (2004) (doctrine of present execution permits interlocutory appellate review of denial of special motion to dismiss).

The Appeals Court reversed and ordered the dismissal of the counterclaims pursuant to the anti-SLAPP statute.  Hidalgo v. Watch City Constr. Corp., 105 Mass. App. Ct. 148, 155 (2024). The Appeals Court thereafter invited Hidalgo to file a petition for appellate attorney's fees and costs pursuant to the fee-shifting provision of the anti-SLAPP statute, G. L. c. 231,

---

[4] The motion judge initially dismissed the counterclaims but changed course after granting Watch City's motion for reconsideration.

§ 59H, fifth par.  Id. at 155 n.8.  Hidalgo filed a petition seeking $67,361.25 in fees, a sum he reached through use of the lodestar method.  See Fontaine v. Ebtec Corp., 415 Mass. 309, 324 (1993).  In support of his petition, Hidalgo submitted affidavits from his attorneys, their time records, and affidavits from two other Massachusetts labor and employment lawyers affirming that the hourly rates used in the lodestar calculation were "market rates."  Watch City did not oppose the fee request.

In an order dated February 20, 2025, a panel of the Appeals Court awarded Hidalgo $33,680.65 -- one-half of his requested fee -- and held that Hidalgo's requested fee was not reasonable, even though it concluded that the hours and rates used in Hidalgo's lodestar calculation appeared to be reasonable.  See note 2, supra.  As the panel further explained, "The anti-SLAPP statute issues raised by the appeal were fairly complex, and involved the application of a new standard authored by the Supreme Judicial Court while the appeal was pending."  Nevertheless, the panel reasoned that although the lodestar method is an "important touchstone" when evaluating fee requests, Hidalgo's award ought to also reflect the monetary value of his Wage Act claims.  "In our discretion," the panel wrote, "we do not find it 'reasonable' to award legal fees of $67,000 in prosecuting . . . two counterclaims raised in

response to an $11,000 claim."  Hidalgo moved for reconsideration, the panel denied the motion, and we allowed Hidalgo's application for further appellate review, limited to the issue of appellate attorney's fees.

2.  Discussion.  a.  Statutory background.  The anti-SLAPP statute "establishes a procedure for obtaining the early dismissal of a claim that seeks to impose liability on individuals for exercising their constitutional right of petition."  Bristol Asphalt Co. v. Rochester Bituminous Prods., Inc., 493 Mass. 539, 540 (2024).  This "procedural vehicle[,] known as the special motion to dismiss," also allows the movant to secure attorney's fees related to a meritless SLAPP claim "before significant discovery has occurred."  Id. at 548.  See G. L. c. 231, § 59H, fifth par. ("If the court grants such special motion to dismiss, the court shall award the moving party costs and reasonable attorney's fees, including those incurred for the special motion and any related discovery matters").  "The purpose of the statute is to reimburse persons for costs and attorney's fees if a judge determines that the statute is applicable and allows their motion to dismiss."  Fabre, 436 Mass. at 525, quoting McLarnon v. Jokisch, 431 Mass. 343, 350 (2000).  Indeed, the fee-shifting provision of the anti-SLAPP statute "furthers the statute's underlying purposes of broadly protecting petitioning activity and promoting

resolution of SLAPP litigation quickly with minimum cost" (quotations and citation omitted).  Polay v. McMahon, 468 Mass. 379, 389 (2014).  Here, Hidalgo was entitled to an award of appellate attorney's fees pursuant to G. L. c. 231, § 59H, because he prevailed on his special motion to dismiss Watch City's counterclaims after his interlocutory appeal.

b.  Lodestar multiplier.  We review an award of attorney's fees for an abuse of discretion.  Sutton v. Jordan's Furniture, Inc., 493 Mass. 728, 742 (2024).  "We find abuse of discretion when we determine that a decision resulted from a clear error of judgment in weighing the factors relevant to the decision . . . such that the decision falls outside the range of reasonable alternatives" (citation omitted).  Id.

"The lodestar method is generally used for calculating attorney's fees under fee-shifting statutes," such as the anti-SLAPP statute.  Sutton, 493 Mass. at 742.  See McLarnon, 431 Mass. at 349-350.  Determining reasonable attorney's fees should "begin with the lodestar calculation, based on the number of hours that are reasonably expended and adequately documented, multiplied by a reasonable hourly rate."  LaChance v. Commissioner of Correction, 475 Mass. 757, 772 (2016).  See Hensley v. Eckerhart, 461 U.S. 424, 433 (1983).

In identifying the reasonable hours and rates to be used in a lodestar calculation, the court

> "should consider the nature of the case and the issues presented, the time and labor required, the amount of damages involved, the result obtained, the experience, reputation and ability of the attorney, the usual price charged for similar services by other attorneys in the same area, and the amount of awards in similar cases."

Linthicum v. Archambault, 379 Mass. 381, 388-389 (1979). "No one factor is determinative, and a factor-by-factor analysis, although helpful, is not required." Berman v. Linnane, 434 Mass. 301, 303 (2001). With respect to reasonable hours, the court should generally look at "the amount of time documented by the [prevailing party's] attorney," and then consider "whether this amount of time was reasonably expended." Stowe v. Bologna, 417 Mass. 199, 203 (1994). In making this determination, the court should consider not only the prevailing party's "financial interests at stake but also the [prevailing party's] other interests sought to be protected by the statute in question and the public interest in having persons with valid claims under the statute represented by competent legal counsel." Id. "[C]ompensable hours may be reduced if the time spent was wholly disproportionate to the interests at stake." Stratos v. Department of Pub. Welfare, 387 Mass. 312, 323 (1982). With respect to reasonable rates, the proper starting point is typically "the average rate in the community for similar work by attorneys with the same years' experience." Stowe, supra at 203-204. Judges are afforded considerable discretion in

weighing these and the other <u>Linthicum</u> factors, as they are "in the best position to determine how much time was reasonably spent on a case, and the fair value of the attorney's services." <u>Fontaine</u>, 415 Mass. at 324. See <u>Twin Fires Inv., LLC</u> v. <u>Morgan Stanley Dean Witter & Co</u>., 445 Mass. 411, 429-430 (2005) ("the amount of a reasonable attorney's fee is largely discretionary").

After multiplying the reasonable hours expended by a reasonable rate, the court "may then adjust the [resulting] lodestar calculation upward or downward" to account for circumstances not otherwise adequately captured. <u>Sutton</u>, 493 Mass. at 742, quoting <u>LaChance</u>, 475 Mass. at 772. See, e.g., <u>Fontaine</u>, 415 Mass. at 324 ("In limited circumstances, statutory fee awards may be enhanced to compensate for the risk of nonpayment"). However, as we have previously emphasized, consistency is important; "[a] fair market rate for time reasonably spent preparing and litigating a case is the basic measure of a reasonable attorney's fee under State law as well as Federal law," <u>Fontaine</u>, <u>supra</u> at 326, "and should govern unless there are special reasons to depart from [it]," <u>Stratos</u>, 387 Mass. at 322.

Here, Hidalgo sought attorney's fees only for the anti-SLAPP work performed, necessitated by Watch City's abuse of process and malicious prosecution counterclaims. Hidalgo also

fully prevailed on the anti-SLAPP issues -- which are complex and required application of a revised analytic framework announced during the appeal in this case.  See Bristol Asphalt Co., 493 Mass. at 541-542.  Watch City did not object to the fee request.  And the Appeals Court panel determined the hours expended and the rates charged for the anti-SLAPP work were reasonable.  See note 2, supra.  Nevertheless, the panel awarded Hidalgo only one-half of his requested fee award based on the "amount of damages involved" in the Wage Act claims.  Linthicum, 379 Mass. at 389.  This was an error for the reasons explained infra.

Hidalgo did not seek recovery of attorney's fees for any legal work related to the Wage Act claims.  Indeed, those claims have yet to be litigated.  We have previously declined to consider the "amount of damages involved" for claims for which fees are neither sought nor awarded.  Linthicum, 379 Mass. at 389.  See, e.g., Twin Fires Inv., LLC, 445 Mass. at 430-431 (rejecting argument that judge erroneously based his attorney's fee award on case as whole and not G. L. c. 93A claim on which plaintiff prevailed); Berman, 434 Mass. at 302 & n.4 (rejecting argument that fee award was disproportionate to amount at stake in "count IV," where attorney's fees related to "count I").  The proper question for the court, therefore, was whether the anti-

SLAPP work on appeal, not the monetary value of the Wage Act claims, warranted $67,361.25 in fees.

To be sure, the amount of damages involved is a factor that a court may use in connection with determining the reasonableness of the rate and time spent.  See Linthicum, 379 Mass. at 388-389.  And, in connection with his counsel's unopposed fee application, Hidalgo did not provide the court with such a value for the counterclaims.  Nonetheless, the panel's use of the value of the Wage Act claims, in the absence of any other valuation of the anti-SLAPP counterclaims, was error.  As the panel recognized, the anti-SLAPP issues were complex; furthermore, the complexity of the anti-SLAPP issues on appeal did not depend in any way on the value of the underlying Wage Act claims.  In these circumstances, using the modest sum at stake in the Wage Act claims as a basis for reducing the fee award related to the anti-SLAPP counterclaims was error.

We reiterate that generally, if a court determines that a prevailing party's adequately documented hours and rates are reasonable, as informed by the Linthicum factors, including the

value of the relevant claim, the resulting lodestar award is also, absent special circumstances, reasonable.[5,6]

Moreover, to the extent the Wage Act claims were relevant in resolving the anti-SLAPP motion -- as they were the original petitioning activities that prompted the SLAPP counterclaims and the successful anti-SLAPP motion -- the small amount of lost wages at stake alone does not provide a basis for reducing the appellate attorney's fees sought.

As this court has recognized, "[t]he right[] . . . to petition for a redress of grievances [is] among the most

---

[5] As noted supra, there may sometimes be "special reasons" to adjust the lodestar calculation upward or downward. Stratos, 387 Mass. at 322. See Sutton, 493 Mass. at 742, first quoting LaChance, 475 Mass. at 772, and then quoting Fontaine, 415 Mass. at 324. The appellate anti-SLAPP work in this case, however, did not present such circumstances.

[6] In a docket entry explaining its denial of Hidalgo's motion for reconsideration, the Appeals Court panel stated that "the value of the [SLAPP] counterclaims -- if there were information provided or available regarding the same -- would be a relevant consideration." However, the panel questioned Hidalgo's estimated value of the SLAPP counterclaims ($145,000), particularly because "the $3,000 in lost wages was the only objective evidence of record as to what is at stake in this case." The panel further stated that this argument was waived because Hidalgo did not present it in his motion for attorney's fees. But again, the focus should be on the reasonableness of the rates and the hours spent on the anti-SLAPP work on appeal, and the panel did not challenge the reasonableness of the hours and rates used in Hidalgo's lodestar calculation, see note 2, supra. Moreover, as explained further infra, the modest sum at stake in Hidalgo's Wage Act claims cannot alone be the basis for reducing his fee award.

precious of the liberties safeguarded by the Bill of Rights" and "has been a fundamental aspect of liberty for the better part of 1,000 years" (citation omitted). Cardno ChemRisk, LLC v. Foytlin, 476 Mass. 479, 487 (2017). Indeed, the anti-SLAPP statute was especially concerned with protecting the petitioning rights of "individual citizens of modest means" against retaliatory actions by those with greater resources. Duracraft Corp. v. Holmes Prods. Corp., 427 Mass. 156, 161 (1998).

The Legislature and this court have also emphasized the importance generally of Wage Act claims, as the nonpayment of wages is a major concern. See, e.g., Ferman v. Sturgis Cleaners, Inc., 481 Mass. 488, 495 (2019), quoting Lipsitt v. Plaud, 466 Mass. 240, 245 (2013) (purpose of Wage Act "was 'to prevent the unreasonable detention of wages' by 'unscrupulous employers'"). Although individual nonpayments may not provide significant monetary recovery, such amounts are often, if not always, critical to the wage earners involved. See Reuter v. Methuen, 489 Mass. 465, 468 (2022) (Wage Act was intended "for the protection of employees, who are often dependent for their daily support upon the prompt payment of their wages" [citation omitted]). It is also difficult, as the Appeals Court panel recognized, to incentivize lawyers to take such cases given the modest amounts at stake. See Ferman, supra, citing Lipsitt, supra. To address all of these important concerns, the

Legislature provided for treble damages and attorney's fees under the Wage Act. See Ferman, supra ("The Legislature specifically included fee-shifting provisions in the Wage Act to ensure its rigorous enforcement by private parties" and to "provide both a necessary incentive for attorneys to take such cases and a powerful disincentive for employers to withhold the wages in the first place" [quotation and citation omitted]); Lipsitt, supra at 246 (Legislature "dramatically increased" remedies available under Wage Act by making treble damages mandatory [quotation and citation omitted]). See also Stratos, 387 Mass. at 323 (purpose of fee-shifting provisions "is to encourage suits that are not likely to pay for themselves, but are nevertheless desirable because they vindicate important rights"); School Comm. of Norton v. Massachusetts Comm'n Against Discrimination, 63 Mass. App. Ct. 839, 854 (2005) (fee-shifting provisions "aim[] to attract competent legal counsel for those with meritorious claims yet limited means" [quotation and citation omitted]). Reducing an anti-SLAPP fee award based on the amount of damages sought for lost wages in the underlying Wage Act claims impermissibly minimizes the importance of such claims and risks disincentivizing lawyers from taking Wage Act cases.

3. Conclusion. For the foregoing reasons, we reverse so much of the order on attorney's fees that halves the fee award

based on the value of the Wage Act claims, and as so modified, with a fee award of $67,361.25, the order is affirmed.[7]

So ordered.

---

[7] Hidalgo also requests reasonable attorney's fees and costs incurred in connection with this appeal, to which he is statutorily entitled, pursuant to G. L. c. 231, § 59H. Accordingly, Hidalgo may, within fourteen days of the date of the rescript, file with the clerk of the court for the Commonwealth an application for fees and costs, together with any supporting material. See Fabre, 441 Mass. at 10-11.